NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CLIMA DRAYTON<br>o/b/o R.W., a minor, | : <br> : <br> : | |
| Plaintiff, | : <br> : | **Hon. Dennis M. Cavanaugh** |
| v. | : <br> : | **OPINION** |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY | : <br> : <br> : <br> : | Civ. No.  09-02886 (DMC) |
| Defendant. | : <br> : | |

DENNIS M. CAVANAUGH, U.S.D.J.

This matter comes before the Court upon Clima Drayton's ("Plaintiff") appeal from the Commissioner of Social Security's ("Commissioner") final decision denying Plaintiff's request for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Plaintiff seeks benefits on behalf of R.W., her daughter, a minor child.  This Court has jurisdiction to hear Plaintiff's appeal pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  No oral argument was heard pursuant to Rule 78(b) of the Federal Rules of Civil Procedure.

For the reasons set forth below, the final decision of the Commissioner is **affirmed**.

I. Background

A.   **Procedural History**

On October 3, 2005, Plaintiff Clima Drayton applied for SSI benefits on behalf of R.W., her

1

daughter, a minor child. Administrative Transcript ("TR") 52-54. Plaintiff alleged that her daughter suffered from a disabling asthmatic condition, which made Plaintiff eligible for child's disability benefits as provided for in Title XVI of the Act. Tr. 52. The Social Security Administration initially denied Plaintiff's application on November 22, 2005. Tr. 28-30. Plaintiff filed a timely request for reconsideration, which was also denied on February 17, 2006. Tr. 33-36. At Plaintiff's request, the Administrative Law Judge ("ALJ") John M. Farley held a hearing in Newark, New Jersey on June 4, 2007. Tr. 197-208. At the hearing, Plaintiff appeared and testified on behalf of her daughter. Tr. 201-07.

On August 13, 2007, ALJ Farley issued an opinion denying Plaintiff's application for SSI benefits. Tr. 10-25. ALJ Farley concluded that, since October 3, 2005, Plaintiff did not suffer from a disability under the meaning of the Act. Tr. 13. On October 16, 2007, Plaintiff submitted a request to the Appeals Council for review of the ALJ's decision. Tr. 9. The Appeals Council denied the request on April 13, 2009. Tr. 8.

Plaintiff now seeks review of the Commissioner decision. Pl.'s Br. at 1. Plaintiff asserts that the administrative record contains substantial evidence to support a finding of disability under the Act and asks this Court to reverse the decision of the Commissioner or, in the alternative, to remand for reconsideration. Id.

    **B.**     **Factual Background**

        1.     Testimonial Evidence

R.W. was born on September 29, 2002, and had asthma since birth. See Tr. 52, 204. According to Plaintiff's application, R.W. began to suffer from disabling asthma on May 19, 2005, when she received treatment for a severe attack at Trinitas Hospital. Tr. 61-62. Prior to the

application being submitted, R.W.'s primary physician, Dr. Edgardo Tan, prescribed her Albuterol, nebulizer, and oral steroids. Tr. 65. In the child's function report, Plaintiff stated that R.W. could not: stand with help, walk holding on to something, run without falling, stack more than four blocks on top of each other, or hold a crayon or pencil properly. Tr. 81. Furthermore, Plaintiff indicated that the child's impairment affected her ability to play next to other children. Tr. 82. However, R.W. experienced little difficulty with her sight, hearing, speech, or comprehension skills. Tr. 78-80.

Plaintiff submitted a second disability report on January 11, 2006. Tr. 71-76. The report documented the worsening of R.W.'s condition, including her recent inpatient treatment at Trinitas Hospital. Tr. 72. According to the report, R.W. now had "asthma in both lungs" and each asthma attack would trigger pneumonia. Tr. 71. Additionally, R.W. took Albuterol for asthma, Leftin for pneumonia, and Prednisone for the build-up in her lungs. Tr. 73. She also experienced an increase in vomiting when engaging in physical activities. Tr. 74.

Upon requesting an administrative hearing, Plaintiff indicated that R.W. had received further treatment for her condition. Tr. 84-91. She indicated that, during March of 2006, Trinitas Hospital treated R.W. for an "exacerbation of asthma." Tr. 86. R.W. also received medical care from Dr. Tan, who continued to prescribe her Albuteral and Prednisone. See Tr. 85, Tr. 87.

Plaintiff testified on behalf of R.W. at the June 4, 2007 administrative hearing. Tr. 201-07. According to Plaintiff, R.W. missed a week of class during the previous year and some additional days in February of the current year due to her asthma. Tr. 202. R.W. used Albuterol as her primary medication. Tr. 203. She received a "light dose" of this drug through a nebulizer, four times a day, "as needed." Tr. 203. According to Plaintiff, this took twenty to thirty minutes to administer. Tr.

204. When R.W. experienced an attack, Plaintiff would also put her on the nebulizer. Tr. 205. If R.W. continued to experience difficulty breathing, Plaintiff would take her to the doctor or hospital for treatment. Tr. 205. Additionally, R.W. received cough medication. Tr. 203. Plaintiff indicated a family history of asthma; both R.W.'s father and grandmother had asthma. Tr. 204. At the end of the hearing, Plaintiff's counsel requested that the record be left open to receive more medical evidence. Tr. 207. Although ALJ Farley granted this request, Plaintiff did not submit any additional evidence. Tr. 13.

    2.  <u>Medical Evidence</u>

  On February 17, 2005, Plaintiff admitted R.W. to the Trinitas Hospital emergency room for a cold and "funny breathing at night for [a] couple of days." Tr. 160. According to the nurse's assessment, R.W. was "very active" and "running around." Tr. 160. Her lungs were clear, she had no fever, and her respiratory examination was normal. Tr. 160-61. Dr. Lee treated R.W. for an upper respiratory infection, prescribed her Salien nasal drops and Rondec, and discharged her the same day. Tr. 165.

  Trinitas Hospital admitted R.W. again on May 19, 2005. Tr. 92. Plaintiff told the doctors that R.W. suffered from a constant cough, vomiting, and some wheezing. Tr. 99. The cough persisted for four days and R.W. had vomited four times on the date of the hospital visit. Tr. 99. R.W. also experienced continuous, moderate pain in the right upper anterior chest to the right upper back. Tr. 100. The nurse described R.W. as "content, relaxed." Tr. 99. Additionally, R.W. had "no recent medical problems or change in weight" and displayed a "normal appetite." Tr. 101. R.W.'s respiratory examination came back negative, except for rales when breathing and diffuse, left wheezing. Tr. 102. The chest x-ray revealed "prominent perihilar infiltrates," which may have

represented "reactive airway disease" or "viral bronchiolitis." Tr. 108. R.W. received outpatient treatment for pneumonia, cough, fever, and "asthma w/o [s]tatus." Tr. 95. While at the hospital, R.W. received a nebulizer treatment of Albuterol and Atrovent, and, later, received Amoxicillin and Prelone. Tr. 99-100. The hospital referred R.W. to Dr. Tan for follow-up and proscribed her Proventil, Rondec DM, Prelone, and Zithromax. Tr. 104.

On September 26, 2005, Dr. Tan diagnosed R.W. with "bronchial asthma." Tr. 186-90. Dr. Tan described the condition as "permanent" and requiring "total supervised home care" on a full-time basis. Tr. 187, 189. However, R.W. had "no physical limitation." Tr. 187. Dr. Tan proscribed Albuterol and oral steroids. Tr. 188.

In a general medical report, dated October 13, 2005, someone with an illegible signature indicated that R.W. had a history of bronchial asthma. Tr. 109-11. Her most recent asthma attack was in the doctor's office on September 23, 2005. Tr. 109. R.W. took Albuterol and oral steroids. Tr. 109. According to the report, R.W. had no physical limitations. Tr. 110.

Dr. R. Strauchler completed R.W.'s Childhood Disability Evaluation Form on November 21, 2005. Tr. 114-19. After reviewing the medical records, Dr. Strauchler concluded that R.W. suffered from a severe impairment. Tr. 114. However, this condition did not meet, medically equal, or functionally equal the list of impairments to qualify for disability benefits under the Act. Tr. 114. Dr. Strauchler found that R.W. had no limitation in information acquisition, task completion, interaction with others, object manipulation and self-care. Tr. 116-17. R.W. possessed a less than marked limitation in health and physical well-being. Tr. 117. Dr. Strauchler noted R.W.'s medication history, treatment at Trinatas Hospital on May 19, 2005, and subsequent asthma episode at her treating physician's office. Tr. 117.

On December 27, 2005, R.W. received further treatment at Trinatas Hospital. Tr. 122-41. According to Plaintiff, R.W. experienced an asthma attack for three days that could not be relieved with Albuterol. Tr. 130. R.W. suffered from a cough for one week and a fever for four days. Tr. 130. The nurse noted that R.W. refused to eat, vomited anything she ingested, and had crackling in her lungs on auscultation. Tr. 130. According to the physician's assessment, R.W. also experienced moderate symptoms of cough dyspnea, wheezing, and a shortness of breath, which became steadily worse. Tr. 131. The chest x-ray revealed that R.W.'s right middle infiltrate had a loss in volume and left lung had thickening of the bronchi. Tr. 141. R.W. was diagnosed with asthma without status and pneumonia. Tr. 134. The hospital discharged her on December 29, 2005, with a principal diagnosis of pneumonia. Tr. 122.

A second Childhood Disability Evaluation Form was completed for Plaintiff on January 17, 2006. Tr. 149-154. After reviewing R.W.'s records, and describing R.W.'s December 27, 2005 visit to the emergency room, Dr. Radharah Mohanty concluded that asthma created a serious impairment for R.W. Tr. 149, 152. Similar to Dr. Strauchler's evaluation in 2005, Dr. Mohanty found that this impairment did not meet, medically equal, or functionally equal the Listings. Tr. 149. Rather, R.W. had only a "less than marked" limitation in the domain of health and well-being. Tr. 152.

On January 23, 2006, Dr. Tan completed a disability form for R.W. Tr. 142-46. Dr. Tan noted that R.W. had one acute asthmatic episode in the previous year, on September 23, 2005. Tr. 145. He diagnosed R.W. with a "controlled" and "mild" condition of bronchial asthma. Tr. 144. Furthermore, Dr. Tan concluded that R.W. possessed age appropriate sensory, communication, cognitive, and social/emotional skills, and did not have any other conditions significant to recovery. Tr. 144, 146.

R.W. returned to the emergency room of Trinatas Hospital on March 3, 2006. Tr. 155-57. The hospital admitted R.W. for a cough, shortness of breath and wheezing after home treatment failed to minimize the symptoms. Tr. 171-72. The nursing assessment noted that R.W. appeared "content" and relaxed" but had labored respiration. Tr. 171. A respiratory examination revealed a diffuse wheezing. Tr. 173. R.W. received Albuterol, Atrovent, and Prelone, while at the hospital, and a prescription for Albuterol and Prelone. Tr. 172, 175. That night, the treating physician discharged R.W. with a diagnosis of asthma without status and instructed her to return if she experienced further difficulty breathing. Tr. 176-77.

In a handwritten note on March 12, 2007, Dr. Tan described R.W.'s asthma as "under control." Tr. 179. According to Dr. Tan, R.W. experienced her "last asthma attack" on January 3, 2006. Tr. 179. At the time, she took Albuterol and Prednisone. Tr. 179.

## II. APPLICABLE LAW

### A. Scope of Judicial Review

The Court's review is limited to determining whether the Commissioner's decision is based upon the correct legal standards and is supported by substantial evidence in the record as a whole. See 42 U.S.C. § 405 (g); see also Richardson v. Perales, 402 U.S. 389, 390 (1971). A reviewing court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., Williams v. Shalala, 507 U.S. 924 (1993). Substantial evidence is defined as that quantum of evidence which a "reasonable mind might accept as adequate to support a conclusion." Perales, 204 U.S. at 401 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If there is substantial evidence in the record to support the Commissioner's factual findings, they are

conclusive and must be upheld. 42 U.S.C. § 405 (g). "Substantial evidence" means more than "a mere scintilla." Perales, 402 U.S. at 401 (quoting Consol. Edison Co., 305 U.S. at 229). Some types of evidence are not "substantial." For example,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g. that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). The ALJ must make specific findings of fact to support the ALJ's ultimate conclusions. Stewart v. Sec'y of Health, Educ. and Welfare, 714 F.2d 287, 290 (3d Cir. 1983). "Where the ALJ's findings of fact are supported by substantial evidence, the [reviewing court] is bound by these findings, even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001). Thus, substantial evidence may be slightly less than a preponderance. Stunkard v. Sec'y of Health & Human Servs., 841 F.2d 57, 59 (3d Cir. 1988).

"The reviewing court, however, does have a duty to review the evidence in its totality." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984)). In order to review the evidence, "a court must 'take into account whatever in the record fairly detracts from its weight.'" Id. (quoting Willibanks v. Sec'y of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988)). The Commissioner has a corresponding duty to facilitate the court's review: "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).

As the Third Circuit has held, access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Educ. and Welfare, 567 F.2d 258, 259 (4th Cir. 1977)).

"[The reviewing court] need[s] from the ALJ not only an expression of the evidence []he considered which supports the result, but also some indication of the evidence which was rejected." Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). Without such an indication by the ALJ, the reviewing court cannot conduct an accurate review of the matter; the court cannot determine whether the evidence was discredited or simply ignored. See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citing Cotter, 642 F. 2d at 705); Walton v. Halter, 243 F.3d 703, 710 (3d Cir. 2001). "The district court . . . is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182 (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

**B.     Statutory Standard for Eligibility for SSI Benefits**

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382. Under the Act, an individual under the age of eighteen qualifies as "disabled" for purposes of SSI eligibility if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i) (2010). No individual under the age of eighteen who engages in substantial gainful activity may qualify as disabled, regardless of any medical condition he or she may possess. Id. § 1382c(a)(3)(C)(ii).

Under the authority of the Act, the Commissioner established a three-step process for determining childhood disabilities. See 20 C.F.R. § 416.924(a) (2010). "When applying this test, the burden of proof rests on the claimant at each [of the three] step[s]." R.J. v. Astrue, 2009 U.S. Dist. LEXIS 68455, at *10 (S.D. Ind. July 24, 2009)(S.D. Ind. July 24, 2009). First, the minor must not be engaged in substantial gainful activity. 20 C.F.R. § 416.924(a). Generally, an individual engages in substantial gainful activity if she is doing significant physical or mental work for pay. Id. § 419.972. Second, the claimant must have a medically determinable impairment or combination of impairments that is severe. Id. § 416.924(a). An impairment or combination of impairments will not qualify as severe if it "causes no more than minimal functional limitations." Id. § 416.924(c). Third, the impairment must meet, medically equal, or functionally equal the severity of an impairment listed in Appendix 1 of the regulations. Id. § 416.924(d) (referencing 20 C.F.R. § Part 404, Subpart P, Appendix 1) ("the Listings"). The combined effect of all medically determinable impairments, including those not qualifying as severe, must be considered. Id. § 416.924a(b)(4).

To determine whether a medically determinable impairment functionally equals a listed impairment, the Commissioner assesses the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for one's self; and (6) health and physical well-being. See id. § 416.926a(b)(1) (providing a definition of each domain). The Commissioner

considers any factors relevant to how the claimant functions, including all medical evidence and the claimant's purported symptoms. Id. § 416.924a(b)(2). However, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability." 42 U.S.C. § 423(d)(5)(A).

To functionally equal the Listings, the claimant's impairment or combination of impairments must cause "marked" limitations in two domains or an "extreme" limitation in one domain. Id. § 416.926a(d). A child has a "marked" limitation in a domain when his or her impairment(s) seriously interferes with the ability to independently initiate, sustain, or complete activities. Id. § 416.926a(e)(3). A limitation qualifies as "extreme" when his or her impairment very seriously interferes with the claimant's day-to-day functioning. Id.

### III. Discussion

Plaintiff asserts that ALJ Farley's decision denying Plaintiff disability benefits was not supported by substantial evidence. As step one of the determination, ALJ Farley found that claimant did not engage in substantial gainful activity. Tr. 16. At step two, ALJ Farley concluded that R.W.'s asthma was a severe impairment, and at step three, he determined that Plaintiff's impairment did not meet, or medically/functionally equal the severity of an impairment listed in Appendix 1 of the regulations. See Tr. 16.

Plaintiff asserts that ALJ Farley erred at step three in the analysis. Plaintiff claims that substantial evidence in the record established that R.W.'s severe impairment met, medically equaled and functionally equaled the Listings for asthma and, therefore, this Court must reverse the Commissioner's final decision. Pl.'s Br. at 4. Alternatively, Plaintiff argues that the Commissioner's

decision is beyond meaningful judicial review and requests that this Court remand for further comparison between the Listings and the claimant's medical impairment. Pl.'s Br. at 4-5. The Court disagrees with Plaintiff, and will affirm the decision of the ALJ.

>   **A.     Substantial Evidence Supports the ALJ's Determination that R.W.'s Impairment Does Not Meet, Medically Equal, or Functionally Equal the Listings.**
>
>>     1.     <u>R.W.'s Impairment Does Not Meet the Listings for Asthma</u>.

Plaintiff claims that the medical evidence demonstrates that R.W.'s condition meets the Listing for asthma. Pl.'s Br. at 4. According to the regulations, an impairment meets the requirements for asthma if:

> A. [The claimaint's] FEV [is] equal to or less than the value specified in Table I of 103.02A;
>
> or
>
> B. [The claimaint suffers from a]ttacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 24 consecutive months must be used to determine the frequency of attacks
>
> or
>
> C. [The claimaint suffers from p]ersistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with one of the following: 1. Persistent prolonged expiration with radiographic or other appropriate imaging techniques evidence of pulmonary hyperinflation or peribronchial disease; or 2. Short courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12-month period;
>
> or
>
> D. [The claimaint suffers from a g]rowth impairment as described under the criteria in 100.00.

20 C.F.R. § Part 404, Subpart P, Appendix 1, § 103.03.

Plaintiff makes no argument that she has met the requirements of subprovision (A), (C), or (D), supra. Plaintiff''s brief labels R.W.'s condition "chronic bronchial asthma," Pl.'s Br. at 7, yet provides no explanation as to how this condition meets the specific criteria for chronic asthmatic bronchitis under subprovision (A). Furthermore, Plaintiff provides a brief mention of R.W.'s "steroid regime." Pl.'s Br. at 8. However, Plaintiff makes no attempt to provide any connection between the steroid therapy and the "short courses of corticosteroids" required under subprovision (C).[1] The Court does not find that Plaintiff's impairment meets the Listings for asthma pursuant to subprovision (A), (C), or (D) are supported by substantial evidence in the record.

As to subprovision (B), substantial evidence supports the ALJ's finding that Plaintiff's asthma attacks do not meet the Listing requirements. Tr. 16. R.W. had three asthma related visits to the emergency room – May 19, 2005, December 27, 2005, and March 3, 2006 – over the course of a thirteen-month period. R.W.'s December 27, 2005 visit resulted in inpatient hospitalization for two days.[2] Therefore, this hospitalization counts as two attacks. See 20 C.F.R. § Part 404, Subpart P, Appendix 1, § 103.03B ("Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks."). Additionally, on September 23, 2005, R.W. suffered an acute asthma attack,

---

[1] In Plaintiff's October 16, 2007 letter to the Appeals Council, Plaintiff argued that R.W. "was taking short courses of corticosteroids as noted . . . in [Section] 103.03." Tr. 191-92. Specifically, "steroids [were] prescribed and taken on 5/20/05 (5 days); 9/23/05 (5 days); 3/3/06 (5 days) and 11/6/06 (5) all meet[ing] provisions of 103.03." Tr. 191-92. Because counsel failed to develop this argument in Plaintiff''s brief before this Court, the argument under subprovision (C) is waived. Conroy v. Leone, 316 Fed. Appx. 140, 144 n.5 (3d Cir. 2009).

[2] The Commissioner characterizes the December 27, 2005 emergency room visit as unrelated to asthma. Def.'s Br. at 10. Although R.W.'s principal diagnosis was pneumonia, sufficient evidence supports Plaintiff's claim that R.W. also received treatment for an asthma attack. Tr. 131 (describing R.W.'s asthma attack as lasting three days and not relieved with Albuterol); Tr. 134 (listing asthma as a diagnosis).

visited a physician's office, and was prescribed steroids. Tr. 109. Even if this visit to a physician qualifies as an attack, that would equal five attacks in a thirteen-month period. See id. This fails to meet the listing-level severity necessary for asthma.

Plaintiff alleges that in addition to these treatments,[3] R.W. was admitted to the hospital for an asthma attack on February 17, 2005 and September 23, 2005. Pl's Br. at 7. Both claims lack any evidentiary foundation. On February 17, 2005, R.W. was hospitalized solely for an upper respiratory infection. Tr. 165. The medical records offer no mention of asthma and/or any asthma-related treatment. See Tr. 158-67. While Plaintiff told the nursing staff that R.W. experienced "funny breathing at night for [a] couple of days" prior to hospital admission, Tr. 160, this is a symptom of a common cold, not a severe asthma attack. Cf. Perez v. Astrue, No. 2:09-1504, 2009 WL 4796738, at *4 (D.N.J. Dec. 9, 2009) (holding that symptoms consistent with both a cold or asthma did not rise to the listing-level severity for asthma). Additionally, R.W.'s mother described the disability as beginning months later, on May 19, 2005. Tr. 52. Accordingly, because the record suggests no link between R.W.'s February 17, 2005 hospitalization and her asthma, Plaintiff's claim fails to be supported by substantial evidence.

Additionally, Plaintiff mistakenly claims that R.W. visited the emergency room on September 23, 2005 and her treating physician's office on September 26, 2005. Pl.'s Br. at 7. From these allegations, Plaintiff concludes that R.W. suffered two separate asthma attacks under the Listings. Pl.'s Br. at 7. In actuality, R.W. visited a physician's office for an asthma attack on September 23,

---

[3] Plaintiff's brief also refers to emergency room visits on December 19, 2005 and March 15, 2006. Pl.'s Br. at 7. Nothing in the record supports this assertion. Because of the closeness in time between these dates and the documented emergency room visits on December 27, 2005 and March 3, 2006, this Court assumes that Plaintiff intended to refer to the dates supported by the record.

14

2005. Tr. 109; see supra. She received no further treatment for an attack in the days following. While Dr. Tan examined R.W. and documented her condition on September 26, 2005, this visit does not constitute an attack under the Listings. Tr. 186-89. For a purported attack to qualify as evidence of asthma, it must be supported by documentation of "what treatment was administered, what the response to the treatment was, along with spirometry results." Perez, 2009 WL 4796738, at *3. Plaintiff's brief fails to establish that the September 26, 2005 visit constituted a separate attack: the supporting documentation lists no treatment and no spirometry results are listed. Rather, it appears that R.W.'s visit to Dr. Tan amounted to a routine medical examination.

        2.        The Combination of R.W.'s Impairments Does Not Medically Equal the Listings for Asthma.

Alternatively, Plaintiff argues that the combination of R.W.'s impairments medically equaled the Listings and, therefore, qualifies as a disability under the Act. In support of this contention, counsel's brief quotes extensively from Torres v. Comm'r of Soc. Sec., 279 Fed. Appx. 149 (3d Cir. 2008). In Torres, the Third Circuit remanded the case to the ALJ for a combination analysis of whether and why Torres' diabetes, Hepatitus C, back problem, headaches, chronic bronchitis, left eye blindness, glaucoma, depression, anxiety, bipolar disorder and personality disorder were or were not equivalent to the Listings. Id. at 152.

Yet, the only severe impairment discussed by Plaintiff and considered by the ALJ was asthma. Plaintiff's brief points to no impairments, much less severe impairments, other than asthma.[4] All

---

[4] While the medical evidence demonstrates that R.W. was treated for an upper respiratory infection, pneumonia, cough, and fever on numerous occasions, see, e.g., Tr. 160-61, Tr. 92-108, Tr. 122-41, the record fails to demonstrate that R.W. suffered from an independent impairment as a result of these conditions. Not only has Plaintiff failed to make any evidentiary showing in this regard, but she

medical reports list asthmatic bronchitis as R.W.'s sole medical condition. See, e.g., Tr. 64 (November 21, 2005 Childhood Disability Evaluation Form); Tr. 149 (February 17, 2006 Childhood Disability Evaluation Form); Tr. 142 (January 23, 2006 New York State Office of Temporary and Disability Assistance form). Furthermore, Plaintiff points to no non-asthma related symptoms, limitations or diagnoses. While this Court agrees that the Commissioner's regulations "absolutely mandate that the ALJ combine and compare," Pl.'s Br. at 6-7, in these circumstances, there was nothing for the ALJ to combine in his analysis. Perez, 2009 WL 4796738, at *2. Therefore, when the ALJ had no indication – from either Plaintiff or the medical evidence – that R.W. had multiple impairments, substantial evidence supported the ALJ's conclusion that R.W.'s combined impairments did not medically equal the Listings.

### 3. R.W.'s Impairment Does Not Functionally Equal the Listings in Severity.

The ALJ correctly determined that R.W.'s impairment did not functionally equal the Listings. For an impairment to functionally equal the Listings, a claimant must have a "marked" limitation in two of six domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). The ALJ held that the R.W. only had one "less than marked" limitation in the domain of health and well-being, had no limitation in the other five domains, and, therefore, was not disabled. Tr. 19-24. Substantial evidence in the record supports this finding.

The medical evidence categorically demonstrates that R.W. suffered nothing more than a "less

---

failed to identify any separate impairment. See, e.g., Cosby v. Comm'r of Soc. Sec., 231 Fed. Appx. 140, 146 (3d Cir. May 1, 2007) (affirming ALJ's denial of benefits and noting that "[s]ignificantly, Cosby does not argue or even suggest which listing the ALJ should have applied"). Particularly where the burden of proof is on the Plaintiff, any error the ALJ might have made in not considering these conditions as separate impairments would be harmless. Perez, 2009 WL 4796738, at *3.

than marked" limitation. R.W.'s own treating physician, Dr. Tan, described her condition of bronchial asthma as "intermittent" and "mild." Tr. 144. Dr. Tan continually referred to R.W.'s asthma as "under control." See, e.g., Tr. 144; Tr. 179. After reviewing the entirety of R.W.'s medical file, both Dr. Strauchler, Tr. 117, and Dr. Mohanty, Tr. 152, concluded that R.W. had a "less than marked" limitation in the domain of health and well-being. See Jones v. Sullivan, 954 F.2d 125, 128-29 (3d Cir. 1991) (holding that the opinion of a non-examining expert may constitute substantial evidence). Plaintiff''s own testimony adds supports to these medical findings. According to Plaintiff's testimony before ALJ Farley, R.W. only took a "light dose" of medication in her nebulizer for maintenance purposes. Tr. 203-05.

Nothing in the record indicates that R.W. suffered from a limitation in one of the other five domains. Both Dr. Strauchler, Tr. 116-17, and Dr. Mohanty, Tr. 151-52, concluded that R.W. had no limitations other than asthma. Furthermore, Dr. Tan stated that R.W. had "no physical limitations," Tr. 187, and had age-appropriate communications, cognitive, and social skills, Tr. 144. Plaintiff cites to no contrary evidence. If there is evidence supporting a different functional limitation, this Court is unaware. Perez, 2009 WL 4796738, at *2 (citing United States v Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam) ("Judges are not like pigs, hunting for truffles buried in briefs.")). Substantial evidence in the record supports a finding that claimant only suffered from a "less than marked" limitation in one domain and from no limitations in the remaining five domains.

Plaintiff claims that substantial evidence supports a finding that R.W. is functionally disabled, Pl.'s Br. at 8-9, but offers no medical evaluations to corroborate this assessment. Cosby v. Comm'n of Soc. Sec., (3d Cir. 2007) (finding that the ALJ's "less than marked" finding was supported by substantial evidence when no medical doctor agreed with Cosby's description of his condition).

While a claimant's unsupported, subjective complaints of pain must be seriously considered, they are not controlling. Green v. Schweiker, 749 F.2d 1066, 1067 (3d Cir. 1982). An ALJ can reject these complaints if he has considered the subjective pain, specified his reasons for rejecting these claims, and supported his conclusion with medical evidence in the record. Matullo v. Bowen, 926 F.2d 240, 245 (3d Cir. 1990) (citing Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974)). The ALJ fully considered both the medical evidence and claimant's statements concerning R.W.'s pain. From this review, the ALJ concluded that these complaints were "not entirely credible" and rejected the "statements concerning the intensity, persistence and limiting effects of the claimant's symptoms." Tr. 18. Therefore, the ALJ properly acted, within his discretion, in rejecting the subjective evidence offered by Plaintiff.

### B. The ALJ's Decision Provided Sufficient Explanation of His Findings To Permit Meaningful Judicial Review.

Plaintiff also argues that the Court must vacate and remand under Burnett v. Comm'n of Soc. Sec., 220 F.3d 112 (3d Cir. 2000), because the ALJ failed to explain the basis for finding that R.W.'s condition did not meet, medically equal, or functionally equal the Listings. Pl.'s Br. at 5. Plaintiff's reliance on Burnett is unfounded in light of the ALJ's well-supported opinion.

In Burnett, the Third Circuit concluded that the ALJ's determination, providing only conclusory statements, precluded meaningful judicial review. 220 F.3d at 119. The Court vacated and remanded to the ALJ for further discussion of the evidence and an explanation of the ALJ's reasoning. Id. at 120. However, "Burnett does not require the ALJ to use particular language or adhere to particular format in conducting his analysis." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004). Rather, this Court must determine whether "the ALJ's decision, read as a whole," satisfies

"<u>Burnett</u>'s requirement that there be sufficient explanation to provide meaningful [judicial] review." <u>Id.</u>

Here, the ALJ did not summarily conclude that R.W.'s impairments did not meet, medically equal, or functionally equal the Listings. Rather, the ALJ relied upon medical evidence and the opinions of both examining and non-examining physicians in determining that R.W.'s asthma did not meet, medically equal, or functionally equal the Listings. First, the ALJ adequately supported his determination that R.W.'s condition did not meet the Listings. The opinion provided a detailed discussion of each of R.W.'s asthma-related hospitalizations and physician visits. Tr. 17-18. The ALJ need not specifically characterize each of R.W.'s hospital visits in reaching its conclusion. <u>Maldonado v. Comm'n of Soc. Sec.</u>, 98 Fed. Appx. 132, 135 (3d Cir. 2004). The number of the asthma-necessitated visits, as evidenced in the record, demonstrate that R.W. did not experience the required number of attacks to qualify for disability benefits. <u>See</u> <u>supra</u> Part III.A.1. This Court was able to perform meaningful judicial review, and <u>Burnett</u> goal of meaningful judicial review has been satisfied. <u>Maldonado</u>, 98 Fed. Appx. at 135.

Second, the ALJ did not err by failing to address why R.W.'s combined impairments did not medically equal the Listings. Regulations only require an ALJ to perform a combination analysis when claimant demonstrates multiple impairments. 20 C.F.R. § 404.1526(a) ("If you have **more than one impairment**, and none of them meets or equals a listed impairment, we will review" and conduct a combination analysis) (emphasis added); <u>Perez</u>, 2009 WL 4796738, at *2. According to the full record, R.W. only suffered from one impairment. <u>See</u> <u>supra</u> Part III.A.2. Therefore, the ALJ did not need to provide this Court with any further analysis to permit meaningful judicial review.

Third, the ALJ offered sufficient reasoning in support of his determination that R.W.'s impairment did not functionally equal the Listings. The ALJ devoted six pages of his opinion to describing the six domains of functioning. Tr. 19-24. Within the health and physical well-being domain, the ALJ discussed R.W.'s "multiple hospitalizations for asthma," but found that they mainly "predate[d] her application" and did not require "significant time in the hospital." Tr. 24. Furthermore, the ALJ cited to Dr. Tan's assessment of R.W.'s asthma as "mild," "intermittent," and "controlled." Tr. 24. Within the remaining five domains, the ALJ only offered brief explanations of his findings. See, e.g., Tr. 20 (" The overall record does not reflect that the claimant has any limitations in this domain."); Tr. 22 (same). However, because no evidence supported a contrary finding, see supra Part III.A.3, these brief explanations sufficiently explained the ALJ's determination.

## IV. CONCLUSION

For the aforementioned reasons, this Court concludes that the ALJ's decision was supported by substantial evidence and, accordingly, is **affirmed**. An appropriate Order accompanies this Opinion.

 S/ Dennis M. Cavanaugh  
Dennis M. Cavanaugh, U.S.D.J.

Dated: June  30 , 2010  
Original: Clerk  
cc: All Counsel of Record  
      File